## NORTH TEXAS BUILDING & LOAN ASS'N v. PYEATT et al.

No. 13233.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 4, 1935.

Rehearing Denied Nov. 1, 1935.

Bert King and Arch Dawson, both of Wichita Falls, for appellant.

John J. Watts, of Abilene, Weeks, Morrow & Francis and Henry Penix, all of Wichita Falls, and Bruce E. Oliver, of Abilene, for appellee Pyeatt.

Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellee Massachusetts Bonding & Ins. Co.

BROWN, Justice.

Mrs. Lela Pyeatt, formerly of Amarillo, Tex., now of Abilene, Tex., one of the appellees here, was the lawful owner of 25 shares of stock in appellant, North Texas Building & Loan Association, of Wichita Falls, and early in July, 1932, an impostor, one Lela W. Pyeatt, wife of Roy E. Pyeatt, of Amarillo, Tex., by instrument in writing, sold and assigned to R. H. Compton & Co., a private corporation, 25 shares of the capital stock in said Building & Loan Association, making one R. H. Compton attorney for the purpose

of transferring the stock on the books of the said association.

When this written assignment was presented to the manager of the said association and demand made upon it to transfer the stock to the claimant, the association's officer advised the claimant that the certificate of stock must be produced, or proof made of the loss thereof, and a bond be executed by the said Mrs. Pyeatt, to indemnify the association against loss, by reason of its issuing new certificates in lieu of the old ones.

The claimant presented to the association a written application for the bond signed and sworn to before a notary public, on July 9, 1932, by one Lela W. Pyeatt, in which the correct certificate numbers were set forth, describing the five certificates, each for $500 of capital stock in the said association which had been actually issued to the real Lela Pyeatt, together with the indemnifying bond executed by Lela W. Pyeatt as principal and the Massachusetts Bonding & Insurance Company (also an appellee) as surety and appellant as beneficiary.

This bond correctly describes the original stock certificates issued to Lela Pyeatt; recites that they have been lost or destroyed; that said association at the special request of Lela W. Pyeatt has issued new certificates in lieu of the old, and is conditioned as follows: "Now, then, if said Lela W. Pyeatt, heirs, executors, and administrators, successors and assigns shall well and truly at all times indemnify, save harmless, and protect said North Texas Building & Loan Ass'n from and against all loss, trouble, cost, damage, and expense, by reason of loss of these certificates and if, in case said certificates alleged to have been lost or destroyed, as aforesaid, shall come into the possession or under the control of said Lela W. Pyeatt or of her heirs, executors, administrators, successors, or assigns, the same shall be forthwith delivered to said Massachusetts Bonding and Insurance Company, and by it to said North Texas Building & Loan to be cancelled, and if said Lela W. Pyeatt, her heirs, executors, and administrators, shall in all respects save harmless, protect and indemnify said North Texas Building & Loan Ass'n from and against any and all claims and demands, and all cost, trouble, damage, and expense in the premises, arising out of or connected with said certificates numbered 20541, 20540,

20593, 24048, 20542, including all costs and counsel fees and expenses incurred in defending any claim or demand to or for said loss, then this obligation shall be void, otherwise it shall remain in full force and effect."

With these facts before it, the appellant association canceled the old stock certificates and issued new ones to R. H. Compton & Co. They are now in the hands of an innocent purchaser.

Late in December, 1933, Mrs. Lela Pyeatt, the true owner of the stock, wrote the association advising it of her new address, in Abilene, Tex., and requested that her dividend checks be sent to her at such address. This brought from the association a reply calling attention to the fact that Mrs. Pyeatt had sold her stock and same had been transferred on the books. Photostat copies of the transaction were furnished the real owner, and she brought suit against the Building & Loan Association, the Bonding Company, Compton & Co., and one Dan P. Healey, the notary before whom the impostor executed the several instruments referred to above. She prayed for the value of her stock, thus converted, and for exemplary damages.

The Building & Loan Association answered, alleging good faith in its acts concerning the transactions complained of by Mrs. Lela Pyeatt; that it did not know the Mrs. Pyeatt who practiced the fraud was a married woman, but believed she was the real Mrs. Pyeatt, and prayed for judgment over against Lela W. Pyeatt, her husband, Roy E. Pyeatt, R. H. Compton & Co., and the Massachusetts Bonding & Insurance Company, for any sums recovered by Mrs. Lela Pyeatt against it.

The Bonding Company answered Mrs. Pyeatt's petition by general demurrer, specially excepting because the bond sued upon runs in favor of the Building & Loan Association and that the plaintiff has no cause or right of action against it, and specially excepting to all allegations seeking exemplary damages, and a general denial.

We find no pleading in the transcript urged by the Bonding Company against the cross-action brought by the Building & Loan Association against it. This cause was lodged with the Court of Civil Appeals on December 8, 1934—more than nine months ago—and the cause submitted and argued on September 13, 1935, and no ef-

fort has been made to supplement the transcript. We do not know what, if anything, the Bonding Company pleaded in answer to the said cross-action filed by its codefendant.

The cause was tried to a jury.

The Bonding Company's request for a peremptory charge as against Mrs. Pyeatt's claim against it was granted, but its like request as against the claim of the Building & Loan Association was denied.

The trial court submitted seven special issues to the jury, in substance, as follows: (1) The reasonable market value of the stock, per share, in January, 1934. Answer, $32. (2) Such market value in July, 1932. Answer, $29. (3) The highest market value of the stock between July, 1932, and July, 1934. Answer, $39. (4) The actual value of the stock to Mrs. Pyeatt. Answer, $100. (5) Was the failure of the association to discover in January, 1934, that the assignment of the stock was not signed by the real owner "gross negligence"? Answer, "Yes." (6) Same question as of date July, 1932. Answer, "Yes." (7) The amount of exemplary damages, if any. Answer, $2,500.

On this verdict the trial court awarded the plaintiff, Mrs. Lela Pyeatt, $800 actual damages and $500 exemplary damages against the Building & Loan Association, and awarded the said association judgment for a like amount against Lela W. Pyeatt, Roy E. Pyeatt, and R. H. Compton & Co.; also that the plaintiff and said association take nothing against the Bonding Company and Healey, the notary.

The only party appealing is the Building & Loan Association.

■ It is undoubtedly true that none of the proceedings had served to disturb the rights of the real owner of the stock as a bona fide stockholder. She had two remedies in hand. She could compel the association to issue to her certificates of stock, as her interest appears, or she could treat the acts complained of as a conversion of her property and sue for the value of the certificates thus converted. She chose the last-mentioned remedy.

■ The trial court treated the conversion as of the time shortly after the plaintiff discovered that her stock certificates had been canceled on the books of the association and new certificates issued to a third party, and she had asserted her rights as a stockholder, and rendered judgment on the value of the stock fixed by the jury as of that date. We believe the trial court applied the proper measure of damages.

■ The evidence is wholly insufficient to support any issue of gross negligence and of exemplary damages.

The association is, in a limited sense, a trustee for its stockholders, and the record discloses that it failed to use ordinary care to protect the plaintiff's rights as its stockholder. But the evidence here does not tend to show "that entire want of care which would raise the belief that the act or omission complained of was a result of a conscious indifference to the rights or welfare" of the plaintiff.

The association did what is customarily done, viz., required proof of the loss of the original certificates by the supposed owner, and a bond from her indemnifying the association against loss by reason of canceling the old certificates and issuing new ones. This brings us to the question of the liability, if any, of the Bonding Company to the association, on the indemnifying bond.

■ The association did not procure the bond. It demanded of the purported stockholder and her assigns the indemnifying bond and proof of loss of the original certificates, before it acceded to the demand upon it to cancel the old certificates and issue the new in their stead.

It made no representations with respect to the subject-matter found in the sworn application for the bond, the proof of loss, and in the bond itself. These are the representations of the supposed owner and the surety on her bond.

The record discloses that the association did not see either Mrs. Pyeatt just prior to, or at the time, the transactions were had.

The association had a stockholder by the name of Lela Pyeatt, who lived in Amarillo, and owned, as the books evidenced, the very certificate of stock the impostor, Mrs. Lela W. Pyeatt, sought to sell and have transferred to her assignee. The real Mrs. Pyeatt was a widow. The impostor signed the sale and transfer of the stock, the sworn application for the bond, which includes the proof of loss, and the bond, alone.

Her assignee and the surety on her indemnity bond saw the impostor, or should have done so.

We believe that the bond must be construed as one assuring the Building & Loan Association that the Mrs. Lela Pyeatt, who sold the stock to Compton & Co., and sought to have her lost stock canceled and new certificates issued to her assignee, was in truth and in fact the bona fide owner of the old certificates.

It follows that the trial court was in error in denying the association a recovery upon the bond.

The judgment of the trial court for the plaintiff, Mrs. Lela Pyeatt, against the North Texas Building & Loan Association is by us affirmed.

The judgment awarding the plaintiff exemplary damages in the sum of $500 against the said association is reversed, and judgment here rendered that Mrs. Lela Pyeatt take nothing against said association by way of exemplary damages.

The judgment awarding North Texas Building & Loan Association a recovery of $1,300 against Lela W. Pyeatt, Roy E. Pyeatt, and R. H. Compton & Co., a corporation, is reformed so as to award said association judgment against such named parties in the sum of $800, with 6 per cent. from January 29, 1934, and as reformed is affirmed.

The judgment denying North Texas Building & Loan Association a recovery against Massachusetts Bonding & Insurance Company, a corporation, is reversed, and judgment here rendered that said association recover judgment against said Bonding Company, in the sum of $800, with 6 per cent. interest from January 29, 1934. The judgment in all other respects is by us undisturbed.

The judgment of the trial court is by us undisturbed in part, affirmed in part, reformed and affirmed in part, and reversed and rendered in part.

On Motion for Rehearing and for Certiorari to Perfect the Record.

This cause was filed in this court on December 8, 1934, and was regularly reached and submitted on September 13, 1935—nine months and five days after being filed.

■ Opposing counsel very graciously agrees that we may grant the motion for certiorari and perfect the record, thereby permitting the filing of a copy of Massachusetts Bonding & Insurance Company's

answer and cross-action, but such a motion cannot be granted by us, after a cause is submitted and judgment rendered, even though all parties to the appeal consent to the motion and join in it.

Rule 22 expressly provides: "All parties will be expected, before submission, to see that the transcript of the record is properly prepared, and the mere failure to observe omissions or inaccuracies therein will not be admitted, after submission, as a reason for correcting the record or obtaining a rehearing."

■ Appellate courts are confined to the record as presented, and it is manifestly the duty of all parties to the record to see that it is both complete and that it speaks the truth. It is the duty of any party, who finds the record incomplete, to make a proper motion, to perfect the record, before the cause is submitted. The parties here had nine months to discover the defects before the cause was submitted. Ballard v. Breigh (Tex. Civ. App.) 262 S. W. 886, on rehearing page 891; Patrick v. Pierce, 107 Tex. 620, 183 S. W. 441.

The motion for certiorari is overruled, and the motion for rehearing is likewise overruled.